**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Clinton Jackson and James Thomas, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| Synergies3 TEC Services, LLC, | ) ) |
| Defendant. | ) ) |

Civil Action No. 4:19-cv-00178-SRC

**JOINT MOTION FOR PRELIMINARY FLSA SETTLEMENT APPROVAL AND CONSOLIDATION**

Defendants Synergies3 TEC Services, LLC, Benton Odom, Eric Atchley, along with all Named and Opt-in Plaintiffs in the above-captioned case and the collective action case styled *Overland v. Synergies3 TEC Services, LLC*, et al., Case No. SA-20-CA-447-FB (together "the Parties") jointly move the Court for consolidation of the two actions and approval of the proposed settlement encompassing both actions.[1] As detailed below, consolidation of the two actions for settlement purposes would save considerable judicial resources and time and the settlement is a fair and reasonable resolution of the Parties' bona fide disputes as to liability and damages under the FLSA.

---

[1] Benton Odom and Eric Atchley are individual defendants in the *Overland* matter, in addition to Synergies3 TEC Services, LLC.

1

**BACKGROUND**

I.     **SUMMARY OF THE LITIGATION**

    A.     <u>The Parties</u>

Synergies3 is a satellite installation provider for AT&T, formerly DirecTV. It provides satellite installation services to AT&T customers across the United States. Eric Atchley and Benton Odom are co-owners of Synergies3. Plaintiffs are independent contractor installation technicians who install, repair, and disconnect wiring, satellite dishes, and other telecommunications equipment in customers' homes and on business premises.

    B.     <u>This Lawsuit ("*Jackson*")</u>

On February 4, 2019, Clinton Jackson and James Thomas filed a collective and class action in the U.S. District Court of the Eastern District of Missouri, naming Synergies3 TEC Services, LLC as Defendant. The *Jackson* Plaintiffs filed an Amended Complaint on February 20, 2019 and a Second Amended Complaint on May 1, 2019. Plaintiffs asserted claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"), the Missouri Minimum Wage Law ("MMWL"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Employee Classification Act ("IECA"). Plaintiffs alleged an FLSA collective, a Missouri Rule 23 class, and an Illinois Rule 23 class. On October 29, 2019, the court conditionally certified the FLSA collective, certifying a collective class of "all individuals who worked as installation technicians for Synergies3, and whom Synergies3 classified as independent contractors, at any time between February 4, 2016 and the date final judgment is entered in this case." (ECF No. 61, Memorandum and Order.) During the 45-day opt-in period, a total of 216 eligible opt-in Plaintiffs joined the two Named Plaintiffs in

the case.[2] The Parties conducted discovery including detailed written requests and seven total depositions. (Desai Decl. ¶ 3.) The discovery deadline closed on November 20, 2020. (ECF No. 115, Case Management Order.) During the months of December 2020 and January 2021, the Parties in *Jackson* filed cross-motions for summary judgment and the *Jackson* Named Plaintiffs filed a motion for final FLSA certification and Rule 23 certification of the Missouri class. (ECF Nos. 144, 157, 158.) Given the tentative settlement agreement, and at the request of the Parties, on July 29, 2021, the Court dismissed the filed motions without prejudice, stayed all pending deadlines and vacated the jury trial that was scheduled for October 4, 2021. (ECF No. 183.) The Court set the final approval hearing for Oct. 12, 2021. (*Id.*)

    **C.**    **The *Overland* Lawsuit**

Plaintiff Talon Overland, after being excluded from *Jackson* for filing his consent to join form late, filed a separate action in the Western District of Texas, San Antonio Division on April 9, 2020, currently styled *Overland v. Synergies3, Tec Services, LLC, Benton Odom, and Eric Atchley*, No. 5:20-cv-00447 FB (W.D. Texas). Plaintiff Overland, individually and on behalf of other similarly situated installation technicians, asserted claims for unpaid overtime under the FLSA against Defendant Synergies3. (*Overland*, ECF No. 1.) On November 16, 2020, Plaintiff Overland moved to amend the complaint to add Defendant Synergies3's co-owners, Eric Atchley and Benton Odom, which the Court granted on November 10, 2020. (*Overland*, ECF No. 34.) While Plaintiff did not move for conditional certification, there are a total of 51 eligible opt-in Plaintiffs who filed consent forms in addition to Named Plaintiff Overland. The Parties engaged

---

[2] The Court denied the inclusion of opt-in plaintiffs who submitted their consent to join forms after the deadline, and the majority of those late opt-ins instead joined the lawsuit brought in Texas by late opt-in Plaintiff Talon Overland, discussed *infra*.

3

in the discovery process, with Plaintiffs filing a motion to compel discovery on May 20, 2021.[3] Given the tentative settlement agreement, and at the request of the Parties, the *Overland* court denied the motion to compel without prejudice on July 7, 2021. (*Overland*, Text Order dated July 7, 2021.) On August 6, 2021, the Parties filed a Joint Motion to Transfer *Overland* to the United States District Court for the Eastern District of Missouri, with assignment to the Honorable Judge Stephen R. Clark for settlement purposes. (*Overland*, ECF No. 61.) The *Overland* court granted the Parties' Joint Motion to Transfer on August 11, 2021. (*Overland*, ECF No. 62.)

## II.     TERMS OF THE SETTLEMENT

### A.     Settlement Amount and Allocation

On August 8, 2021, the Parties fully executed a Settlement Agreement, attached hereto as Exhibit 1, resolving both *Jackson* and *Overland*. Pursuant to the agreement, Defendants agree to pay a settlement amount of $500,000 ("Settlement Fund"), inclusive of Plaintiffs' attorneys' fees and costs.[4] A total of 270[5] Plaintiffs and Opt-in Plaintiffs ("Plaintiffs"), who are listed on Exhibit B of the Settlement Agreement, are eligible to participate in the settlement. Each individual who participates in the settlement will receive a pro rata share of the total settlement amount. All costs not to exceed $25,000, administration costs, plus a 33 1/3% contingent fee to Plaintiffs' counsel, service payments of $5,000 for each of the three Named Plaintiffs, and a $5,000 contingency fund for settlement administration, were deducted from the Settlement Fund before individual

---

[3] The Parties agreed during the discovery period in *Overland* that the depositions taken and documents produced in *Jackson* may be used for litigation purposes in *Overland*.

[4] The financial condition of Defendant Synergies3 was a significant consideration in the negotiations of the settlement. Defendants provided a declaration attesting to and confirming the current financial hardships faced by Synergies3 TEC Services, LLC, and inability to pay a substantially larger settlement amount or judgment, if any, for Plaintiffs' overtime claims.

[5] There are a total of 52 plaintiffs in the *Overland* matter and 218 in *Jackson* who are eligible to participate in the proposed settlement.

allocations were made. The individual allocations were then determined based on when and for how long each individual worked as an installation technician with Synergies3 and the pay data produced by Defendants to determine the appropriate overtime rate. The settlement payments range from $50 (the minimum) to $5,632, with an average settlement payment of $1,058. (Desai Decl. ¶ 5.)

Defendants have placed the Settlement Fund in an escrow account for the benefit of Plaintiffs. Once the settlement is approved by the Court, the Settlement Administrator, Analytics Consulting, LLC, will establish a Qualified Settlement Fund within three days of the Court's order and will transfer the Settlement Fund held in Escrow to the QSF, with the funds to be held for the benefit of the Plaintiffs. (Ex. 1, Settlement Agmt. ¶ 10.2.)

### B.  Notice of Settlement and Opportunity to Reject

If the Court approves the proposed settlement, the Settlement Administrator will send each Plaintiff a Notice of Settlement, attached as Exhibit B to the Settlement Agreement, within fourteen (14) days of the approval.[6] (Ex. 1, Settlement Agmt. ¶ 6.1.) Each Notice of Settlement will include the individual's specific settlement amount offered and a release form. Plaintiffs will have 60-days to return a release form or to provide a written rejection. (*Id*. at ¶ 6.3.) Those who reject their settlement offer, or who neither accept nor reject their settlement offer, will not receive their allocated settlement amount, and will forfeit their consent-based tolling if they do not re-file their claim within 30 days after the Court's dismissal. (*Id*. at ¶ 6.6.) The amounts allocated to Rejecters or Non-Responders, if any, will be reallocated pro rata to Settling Plaintiffs. (*Id*. at ¶

---

[6] The Settlement Administrator will issue an IRS-1099 form to each Plaintiff receiving a settlement payment. Half of each payment will be reported as Non-Employee Wages and the other half as "other income" representing liquidated damages, penalties and income. (Ex. 1, Settlement Agmt. ¶ 7.1.)

5

6.7.) Defendants have the right to nullify the settlement if more than ten percent (10%) of Plaintiffs reject the settlement. (*Id.* at ¶ 6.9.)

### C. Release of Claims

Plaintiffs who accept their settlement allocation ("Settling Plaintiffs") will release all claims against the Released Parties[7] asserted in *Jackson* and *Overland*, FLSA overtime claims related to the FLSA claims raised in the litigation, and corresponding state and local overtime law claims and common law claims for recovery of unpaid overtime, including without limitation the MMWL, the IMWL, and the IECA, incurred while working in the installation technician position for Defendants through July 6, 2021. (*Id.* at ¶¶ 8.1, 2.14, 2.15.)

### D. Settlement Checks

The Settlement Administrator will disseminate the settlement checks to Settling Plaintiffs within either (1) 14 days of the close of the Notice Period, or (2) 14 days after the case is dismissed, whichever is later. (*Id.* at ¶ 7.2.) Settlement checks must be cashed within ninety (90) days of issuance by the Settlement Administrator. Any uncashed checks after 90 days will be donated to a mutually agreed upon *Cy Pres* beneficiary. (*Id.* at ¶ 7.3.)

## ARGUMENT

### I. THE *JACKSON* ACTION SHOULD BE CONSOLIDATED WITH THE *OVERLAND* ACTION FOR SETTLMENT PURPOSES.

Federal Rule of Civil Procedure 42, subsection (a), governs consolidation. That rule provides: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3)

---

[7] The Released Parties are Defendants and their respective predecessors and successors, current and former direct and indirect subsidiaries, parents, divisions, and affiliates, and the current and former servants, attorneys, agents, employees, owners, LLC members, shareholders, board members, directors and officers of any such entity. (Ex. 1, Settlement Agmt. ¶ 2.14.)

6

issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). The decision of whether to order consolidation is highly discretionary. *Enterprise Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994). "Consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Id.* (citations omitted).

Consolidation is appropriate here given the nearly identical overlapping questions of law and fact shared by the *Jackson* and *Overland* actions. The central issue in dispute in both actions is whether Synergies3 violated the FLSA with regard to its installation technicians. The Parties are represented by the same counsel in both actions. The Parties have reached a global resolution to settle the two matters co-extensively, and thus consolidating the two matters for settlement purposes would save considerable resources and time. *Lewis v. Tiger Eye Pizza, LLC*, No. 4:19-CV-4007, 2020 WL 7338072, at *2 (W.D. Ark. Dec. 14, 2020) (finding consolidation of two FLSA cases appropriate where there was no "risk of inefficiency, inconvenience, or unfair prejudice to any of the parties").

**II.   THE LITIGATION INVOLVES BONA FIDE DISPUTES AND THE PROPOSED SETTLEMENT FAIRLY RESOLVES THE CLAIMS.**

The Parties request that the Court review and approve the proposed settlement of both the *Jackson* and *Overland* litigation. A district court may only approve a FLSA settlement agreement after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties. *Fry v. Accent Mktg. Servs. L.L.C.*, No. 4:13-CV-59-CDP, 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). "A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute, since employees may not waive their entitlement to minimum wage and overtime pay under FLSA." *King v. Raineri Const., LLC*, No. 4:14-CV-1828-

7

CEJ, 2015 WL 631253, at *1 (E.D. Mo. Feb. 12, 2015). The *Jackson* and *Overland* litigation involve bona fide disputes and the proposed settlement fairly and reasonably resolves the Parties' claims and defenses.

### A.     A Bona Fide Dispute Exists

The Parties dispute several key issues including: (1) whether Plaintiffs were properly classified as exempt independent contractors under the FLSA; (2) the number of overtime hours worked; (3) whether Defendants acted in good faith in classifying Plaintiffs as independent contractors, which finding could eliminate a recovery of liquidated damages; (4) whether Defendants willfully violated the FLSA; and (5) whether the case may proceed to trial as a collective action. Indeed, the Parties filed cross-motions for summary judgment on several issues and were preparing for trial at the time of settlement. Accordingly, a bona fide dispute exists. *See Fry v. Accent Mktg. Servs., L.L.C.*, No. 4:13-CV5-9-CDP, 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014) ("This settlement is undoubtedly the product of contested litigation as the parties dispute nearly every aspect of this case"); *Boland v. Baue Funeral Home Co.*, No. 4:15-CV-00469-RLW, 2015 WL 7300507, at *2 (E.D. Mo. Nov. 18, 2015) (finding a bona fide dispute "where the parties dispute the amount of overtime hours Plaintiff actually worked and whether defendants refused to pay for mandatory work hours.")

### B.     The Settlement is Fair and Reasonable

A court may approve a settlement under the FLSA after scrutinizing it for fairness. "In determining whether a settlement is fair and reasonable under the FLSA, factors a court may consider include the stage of the litigation and amount of discovery exchanged, the experience of counsel, the probability of plaintiffs' success on the merits, any 'overreaching' by the employer in the settlement negotiations, and whether the settlement was the product of arm's length

8

negotiations between represented parties based on the merits of the case." *Tanner v. Empire Fin., Co. LLC,* No. 4:19-CV-0825-SEP, 2020 WL 7316115, at *1 (E.D. Mo. Dec. 11, 2020) (quoting *King*, 2015 WL 631253, at *2). "In reaching a determination, courts should be mindful of the strong presumption in favor of finding a settlement fair." *Id.* (internal quotations omitted).

Here, the settlement is fair and reasonable and should be approved. First, the stage of the litigation favors settlement. The cases have been heavily litigated, with the *Jackson* litigation continuing for more than two years. The Parties engaged in discovery and exchange of information before reaching a settlement. *See Pendergrass v. Bi-State Utilities Co.*, No. 4:18-CV-01092-NCC, 2019 WL 3532005, at *2 (E.D. Mo. Aug. 2, 2019) (finding FLSA settlement fair and reasonable where "the parties agreed to the settlements only after completion of significant discovery."). In *Jackson* the Parties also filed cross-motions for summary judgment, arguing the merits of the claims in extensive detail, and a contested motion for final FLSA and Rule 23 certification. The proposed settlement reflects consideration of the discovery taken, and the Parties' bona fide dispute on the issues raised in their dispositive motions, and favors approval.

Further, the Parties engaged in extensive arm's length and good-faith settlement negotiations. *See Ezell v. Acosta, Inc.,* No. 4:16-CV-870-RLW, 2019 WL 8160704, at *3 (E.D. Mo. Apr. 4, 2019) (finding an FLSA settlement was reached by arm's length negotiation where "[a]ll parties involved [were] represented by experienced counsel throughout the litigation" and "the parties participated in mediation."). The Parties first attended a mediation with experienced mediator John Phillips on December 8, 2020. The Parties did not reach a resolution after the full-day mediation, but continued negotiations several months later with the assistance of Mr. Phillips after the Parties filed dispositive motions. Counsel for the Parties also engaged in direct and frank discussions about the merits of the case, damages, and the financial condition of Defendant

9

Synergies3.  (Desai Decl. ¶ 4.) *See Jones v. Brosnan Risk Consultants, Ltd*., No. 20-CV-03143-SRB, 2020 WL 6877735, at *2 (W.D. Mo. Nov. 23, 2020) ("The fairness of the process by which the proposed settlement was reached, therefore, further ensures a just outcome"). Both sides were represented by competent counsel who have extensive experience litigating FLSA matters. The Parties reached a settlement after the benefit of full discovery, the filing of dispositive motions, and with the additional exchange of information to sufficiently evaluate the claims and defenses.

The settlement, moreover, reflects a good recovery for Plaintiffs given the risks and challenges in proceeding with the litigations.  Plaintiffs will receive an average of $1,058, which represents the equivalent of approximately two (2) hours of unpaid overtime for each eligible week worked. (Desai Decl. ¶ 5.) Under the proposed settlement, Plaintiffs are guaranteed money now rather than having to participate in prolonged litigation on challenging issues, where they may not receive anything. Absent settlement, Plaintiffs would have to succeed in proving that Defendants misclassified them as independent contractors.  Defendants contest liability, dispute the number of hours worked, and challenge that a third year of damages for willful conduct is appropriate or that liquidated damages should be awarded.  Even if Plaintiffs won on liability and were awarded damages at trial, the ability for Defendants to pay a judgment was a significant consideration when negotiating the settlement terms. This settlement avoids the expense and uncertainty of both further litigation and the ability of payment.

Lastly, the settlement does not contain a confidentiality provision and includes a release narrowly tailored to the claims asserted in the litigations.  The settlement is fair and reasonable and should be approved.

## C. Plaintiffs' Requested Attorneys' Fees and Costs Are Fair and Reasonable[8]

The FLSA provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). As part of the settlement of these cases, the Parties agreed that Plaintiffs would seek the Court's approval of an award of $166,666.67 in reasonable attorneys' fees calculated as one-third (33.33%) of the Settlement Fund. The Eighth Circuit has clarified that "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of attorneys' fees." *Del Toro v. Centene Management Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *2 (E.D. Mo. May 5, 2021).[9] Instead, this Court should only assess whether the fees are fair and reasonable, and the inquiry "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The Court must assess the reasonableness of Plaintiffs' attorney fees in a proposed FLSA settlement, even when the fee is negotiated in the settlement rather than through judicial determination." *Tanner v. Empire Fin.*, Co. LLC, No. 4:19-CV-0825-SEP, 2020 WL 7316115, at *2 (E.D. Mo. Dec. 11, 2020). "In a private FLSA action where the parties settled on the fee through negotiation, there is a greater range of reasonableness for approving attorney's fees." *Bench v. Cheyenne Logistics,*

---

[8] The Eighth Circuit has held that "29 U.S.C. § 216 does not require approval of settled attorney fees." *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("The parties were entitled to settle the attorney fee issue, and no law gave the district court authority to interfere with that unconditional right."); *see also Loveless v. EcoTech, LLC*., No. 4:19-CV-02698-SNLJ, 2020 WL 1032239, at *1 (E.D. Mo. Mar. 3, 2020) ("it has been made clear that any authority for judicial approval of FLSA settlements ... does not extend to review of settled attorneys fees."). However, some courts in this District have found *Barbee* inapplicable where the proposed fees are calculated as a percentage of settlement funds. *See Del Toro v. Centene Management Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *2 (E.D. Mo. May 5, 2021) ("*Barbee* does not apply because, among other reasons, the proposed attorney's fees are calculated as a percent of settlement funds and are therefore necessarily intertwined with the plaintiff's settlement.") (internal quotations omitted). Given this uncertainty, Plaintiffs will address the reasonableness of their requested fees.

*LLC*., No. 4:14-CV-01327-NCC, 2016 WL 2997591, at *3 (E.D. Mo. May 25, 2016) (internal quotations omitted).

The fee agreement here allows for Plaintiffs' counsel to receive one-third of the total recovery, or $166,666.67. This percentage is in a range frequently approved by courts in the Eighth Circuit. *See Del Toro*, 2021 WL 1784368, at *2 ("a 35% fee is within the range routinely approved by courts in the Eighth Circuit"); *Nyazee v. MBR Mgmt. Corp.*, No. 4:14-CV-01561-AGF, 2016 WL 126363, at * 2 (E.D. Mo. Jan. 12, 2016) (finding attorneys' fees of $75,000—one-third of the total settlement amount—to be reasonable). The amount requested is also considerably less than the fees Plaintiffs' counsel has expended, the bulk of which was from lead counsel Nichols Kaster, PLLP in the amount of approximately $642,658.75. (Desai Decl. ¶ 7.) Plaintiffs' counsel has spent considerable time litigating these cases, including but not limited to, investigating the case, drafting and amending the complaints, taking seven depositions, filing a motion to compel, moving for conditional certification, filing a motion to include late opt-ins, filing a motion to clarify the Court's order dismissing late opt-ins, collecting, reviewing, and producing extensive discovery from Plaintiffs (over 1,793 documents), obtaining information from opt-in Plaintiffs about their claims, performing damage calculations and preparing a demand, participating in mediation and extensive post-mediation negotiations, moving for final certification, moving for partial summary judgment, drafting the settlement agreement, performing the damages allocations, preparing for trial (originally scheduled for June 2021), and drafting this motion. (Desai Decl. ¶ 6.) Litigating a wage and hour case and developing a strategy for a reasonable resolution is not a simple task. Plaintiffs' counsel's experience, and ability to manage complex litigation, aided in positioning the case for a resolution for those who joined. (*See generally* Nichols Kaster, LLP Firm Resume, Ex. 2.) Further, Plaintiffs' counsel will incur additional fees prior to the final approval hearing,

12

including coordinating the Notice of Settlement with the Settlement Administrator, finalizing the settlement allocations, answering Plaintiffs' questions about the settlement, drafting and filing the motion for final FLSA settlement approval, and preparing for the final approval hearing. Plaintiffs' counsel will submit their full fees amount at the time of final approval.

Moreover, Plaintiffs' counsel took this case on a contingency fee basis and assumed a significant risk that there would be no recovery. Plaintiffs' counsel spent significant time and resources in litigating and resolving this case, time that invariably could have been spent on other matters had Plaintiffs' counsel not decided to dedicate their time to this cause. A recovery of just a fraction of fees expended speaks to the risk involved in litigating these cases and the undesirability of taking that risk. Regardless, Plaintiffs' counsel dedicated themselves to litigating this case and positioning it for a fair resolution. A settlement that provides a good recovery for Plaintiffs and opt-in Plaintiffs, in a case where Defendants asserted Plaintiffs were properly classified as independent contractors and that Plaintiffs did not work significant overtime, is a fair result.

Plaintiffs' counsel also requests $$19,551.16 for out-of-pocket costs. (Desai Decl. ¶ 8.) These costs include filing fees and service charges, postage and shipping, deposition transcript fees, mediation costs, research charges, document retention database charges, and case advertising. (*Id.*) These costs are reasonable, were necessary for successful prosecution of the cases, and should be approved.

### D.      **The Court Should Award Service Payments to the Three Named Plaintiffs**

Finally, the Court should approve the Parties' agreed upon service payments of $5,000 to each of the three Named Plaintiffs, Clinton Jackson, James Thomas, and Talon Overland. These payments will be in addition to any payment they will receive as their pro rata share of the

Settlement Fund and are requested in recognition of the time and effort they provided to Plaintiffs' counsel. Courts routinely approve service payments if they are fair and reasonable. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867-68 (8th Cir. 2017) (approved $10,000 service awards to named plaintiffs and affirmed that "courts in this circuit regularly grant service awards of $10,000 or greater."). In assessing the reasonableness of the awards, courts consider (1) actions the plaintiffs took to protect the class' interests; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the Plaintiffs expended in pursuing the litigation. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

Here, Named Plaintiffs Jackson and Thomas were instrumental in initiating and prosecuting the *Jackson* case. Opt-in Plaintiffs will benefit significantly from their involvement, as the *Jackson* case would not have been initiated without their efforts. Plaintiffs Jackson and Thomas participated in an extensive pre-suit investigation and provided key information to Plaintiffs' counsel throughout this case, including documents, that assisted in investigating, filing, litigating, and ultimately resolving this action. They both submitted declarations in support of dispositive motions, attended mediation, and assisted Plaintiffs' counsel in preparing for trial. They also reviewed and signed the Settlement Agreement. (Desai Decl. ¶ 9.)

Plaintiff Overland was also instrumental in providing the *Overland* Opt-in Plaintiffs with the relief provided for in this settlement. Without him coming forward and serving as the named plaintiff in *Overland*, the other 51 individuals in *Overland* would not have had an opportunity to participate in the litigation. Plaintiff Overland also provided key information to Plaintiffs' counsel to assist in litigating the case, and reviewed and signed the settlement agreement. (*Id.* at ¶ 10.)

14

Lastly, the service payment awards of $5,000 to each named plaintiff is not a significant amount of the $500,000 Settlement Fund, representing only 1% of it per named plaintiff. Accordingly, and as set forth above, the service payments are reasonable and should be approved.

## **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that this Court grant their Joint Motion for Preliminary FLSA Settlement Approval and Consolidation.

Respectfully submitted: August 11, 2021

| | |
|---|---|
| By: */s/Reena I. Desai*<br>Rachhana T. Srey<br>MN Bar No. 340133<br>Admitted Pro Hac Vice<br>Reena I. Desai<br>MN Bar No. 0388311<br>Admitted Pro Hac Vice<br>H. Clara Coleman<br>DC Bar No. 1617218<br>Admitted Pro Hac Vice<br>4700 IDS Center, 80 S. 8th Street<br>Minneapolis, Minnesota 55402<br>Tel.: (612) 256-3200<br>Fax: (612) 215-6870<br>srey@nka.com<br>rdesai@nka.com<br>ccoleman@nka.com<br><br>Mark Potashnick, Mo. Bar # 41315<br>markp@wp-attorneys.com<br>WEINHAUS & POTASHNICK<br>11500 Olive Blvd., Suite 133<br>St. Louis, MO 63141<br>Telephone: (314) 997-9150<br>Facsimile: (314) 997-9170<br><br>Eli Karsh, Mo. Bar # 43061<br>elikarsh@aol.com<br>LIBERMAN, GOLDSTEIN & KARSH<br>230 South Bemiston Avenue, Suite 1200<br>St. Louis, MO 63105<br>Telephone: (314) 862-3333<br>Facsimile: (314) 862-0605<br><br>Benjamin Westhoff, Mo. Bar #53047<br>bwesthoff@sedeyharper.com<br>SEDEY HARPER WESTHOFF, P.C.<br>2711 Clifton Ave.<br>St. Louis, MO 63139<br>Telephone: (314) 773-3566<br>Facsimile: (314) 773-3615 | By: */s/ Jay Aldis*<br>Robert A. Kaiser #31410MO<br>Jeremy M. Brenner #63727MO<br>Ida S. Shafaie #66220MO<br>ARMSTRONG TEASDALE LLP<br>7700 Forsyth Blvd., Suite 1800<br>St. Louis, Missouri 63105<br>314.621.5070<br>314.621.5065 (facsimile)<br>rkaiser@armstrongteasdale.com<br>jbrenner@armstrongteasdale.com<br>ishafaie@armstrongteasdale.com<br><br>Jay Aldis<br>Admitted Pro Hac Vice<br>GRAY REED & MCGRAW LLP<br>1300 Post Oak Blvd., Suite 2000<br>Houston, TX 77056<br>Tel 713.986.7175<br>Fax 713.730.5980<br>jaldis@grayreed.com<br><br>ATTORNEYS FOR DEFENDANT<br>SYNERGIES3 TEC SERVICES, LLC |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was sent to all attorneys of record via the Court's e-filing system on August 11, 2021.

*/s/ Reena I. Desai*
